FASULO BRAVERMAN & DI MAGGIO, LLP

ATTORNEYS AT LAW

Louis V. Fasulo, Esq.– NY & NJ
Samuel M. Braverman, Esq.– NY & NJ
Charles Di Maggio, Esq.– NY & CO

www.FBDMLaw.com
SBraverman@FBDMLaw.com

June 19, 2015

Hon. Kenneth M. Karas
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York

Re: *United States v. Vincent Tabone*
Dkt. 13 Cr 297 (KMK)

Dear Judge Karas:

I submit this memorandum in support of Vincent Tabone, who is scheduled to be sentenced by this Court on July1, 2015 upon the jury's verdict of guilty on one count each of Conspiracy to Commit Honest Services Wire Fraud and Travel Act Bribery, Honest Services Wire Fraud, Travel Act Bribery, and Witness Tampering. For the reasons stated herein and in the final Probation and Sentence Report (dated May 4, 2015), I respectfully request that this Court impose a sentence of no more than 24 months, followed by a one-year period of post-release supervision, restitution in the amount of $25,000, and the $400 mandatory special assessment. For the reasons stated herein, the Court should not impose a fine.

A. The Guidelines Range (18 U.S.C. § 3553(a)(4)) and *United States v. Booker*

In the instant matter, Probation has calculated the guidelines as follows ¶¶ 27-39:

| | |
|---|---|
| 1. Guideline §2C1.1(a)(1) sets the base offense level | 14 |
| 2. §2C1.1(b)(1)- More than one bribe | +2 |
| 3. §2C1.1(b)(2)/§2B1.1(b)(1)(D)- intended $50,000 bribe amount | +6 |
| 4. §2C1.1(b)(3)-Malcolm Smith was a high level official | +4 |
| 5. §3C1.1 - Obstruction of Justice | +2 |
| 6. Total Offense Level | 28 |



225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
Fax (212) 566-8165

901 Sheridan Avenue
Bronx, New York 10451
Tel (718) 293-1977
Fax (718) 293-5395

505 Eighth Avenue, Suite 300
New York, New York 10018
Tel (212) 967-0352
Fax (201) 596-2724

Post Office Box 127
Tenafly, New Jersey 07670
Tel (201) 569-1595
Fax (201) 596-2724

Probation recognizes that Mr. Tabone is a Criminal History Category I based upon no prior contacts with the law and 0 criminal history points. A total offense level of 28, criminal history category I, gives a guideline sentence of 78-97 months.

The defendant calculates the guidelines very differently and noted objections to the above calculations in the PSI. (See objections PSI p.22). Probation deferred ruling on the objections and referred the question to this Court. The defendant calculates the guidelines as follows:

| | |
|---|---|
| 1. Guideline §2C1.1(a)(2) sets the base offense level | 12 |
| 2. §2C1.1(b)(2)/§2B1.1(b)(1)(D)- intended $50,000 bribe amount | +6 |
| 3. §3C1.1 - Obstruction of Justice | +2 |
| 4. Total Offense Level | 20 |

As the PSI agrees, Mr. Tabone was not a "public official" (PSI p.22, "Objections by the Defendant"), and thus the base offense level should be 12 and not 14. Similarly, although Malcolm Smith was a "high-level official" as that term is defined by USSG§2C1.1(b)(3), Mr. Tabone was not and thus the four-level enhancement should also not apply. Finally, as probation calculates the intended loss as $50,000 based upon the intended total bribe that the jury concluded Mr. Tabone agreed to, and the bribes paid to others were not included in the calculation leaving just the one bribe paid to Mr. Tabone, therefore there should be no enhancement under USSG §2C1.1(b)(1). The appropriate guideline range should be 33-41 months.

Although Probation does not recommend an "acceptance of responsibility" adjustment, the probation officer does write extensively on Mr. Tabone's insight into his own conduct, the consequence of his decisions, and the undoing of his life's works. (PSI ¶26)

The Supreme Court held in United States v. Booker, 543 US 220, 258 (2005), that the district court has the *duty* to 'consider' the recommended guideline range along with the other factors listed in §3553(a). Pursuant to 18 U.S.C. §3553(a), the Court "shall impose a sentence sufficient but not greater than necessary" to comply with the purposes of sentencing. Thus, the Court must consider: (1) the nature and circumstance of the offense and history and characteristics of the defendant; (2) the need of the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public; (3) all available sentences; (4) the relevant Guidelines ranges, and (5) the need to avoid sentencing disparities.



**225 Broadway, Suite 715**
**New York, New York 10007**
**Tel (212) 566-6213**
**Fax (212) 566-8165**

**901 Sheridan Avenue**
**Bronx, New York 10451**
**Tel (718) 293-1977**
**Fax (718) 293-5395**

**505 Eighth Avenue, Suite 300**
**New York, New York 10018**
**Tel (212) 967-0352**
**Fax (201) 596-2724**

**Post Office Box 127**
**Tenafly, New Jersey 07670**
**Tel (201) 569-1595**
**Fax (201) 596-2724**

In Gall v. United States, 128 S.Ct. 586, 597 (2007), the United States Supreme Court held that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" of a reasonable sentence.

Congress and the Sentencing Commission intended the guidelines to assist courts in reaching appropriate sentences and to ameliorate the impact of a particular case by providing guidelines that take into account thousands of sentences from across the country. As stated in the introductory comments to the Guidelines: "As the Supreme Court noted in *Kimbrough v. United States*, 552 US 85 (2007), 'Congress has shown that it knows how to direct sentencing practices in express terms.' *Id*., at 103; 28 USC §994(h)." USSG 1, Part A, 2. Continuing Evolution and Role of the Guidelines.

Thus, a sentencing court, after considering the advisory Guidelines, is free to fashion a reasonable sentence that it deems appropriate based upon the §3553(a) factors. Any sentence by a court will stand as long as (1) the record is clear that the district court considered the §3553(a) factors and (2) the sentence imposed is supported with a rationale based on the record.

B. The nature and circumstances of the offense (18 U.S.C. § 3553 (a)(l))

In the instant offense, Mr. Tabone was convicted of one count each of Conspiracy to Commit Honest Services Wire Fraud and Travel Act Bribery, Honest Services Wire Fraud, Travel Act Bribery, and Witness Tampering. The facts from the trial testimony are substantially laid out by the Government in the PSR ¶¶ 15-23.

Mr. Tabone stands before this Court for sentence on his one and only contact with the criminal justice system. Mr. Tabone conspired with others to violate the law, and in doing so violated his obligations to his profession, his community, his family, and himself. Mr. Tabone will further describe these events and its impact on him when he speaks with the Court at sentencing. Although the undercover agent and the CI created the illegal schemes, Mr. Tabone was a willing participant who lent his office and good name to try to make the deal happen and benefited from its execution. Throughout this case, Mr. Tabone could always have just said "no".

This case is an enormous disappointment because of the immediate consequences to Mr. Tabone and his family and career, as well as to all citizens who (should) partake in the electoral process. The consequences of his failure continue to affect so many people. But Mr. Tabone is a much more complex individual than his misdeed would suggest. Any person who stands before the Court for sentencing but who never did a single good thing for anyone else could be in "the heartland" of federal cases. But Mr. Tabone has spent his whole life working hard to provide for his community a better world in which to live. He has spent more than 30 years working in both



**225 Broadway, Suite 715 New York, New York 10007 Tel (212) 566-6213 Fax (212) 566-8165**

**901 Sheridan Avenue Bronx, New York 10451 Tel (718) 293-1977 Fax (718) 293-5395**

**505 Eighth Avenue, Suite 300 New York, New York 10018 Tel (212) 967-0352 Fax (201) 596-2724**

**Post Office Box 127 Tenafly, New Jersey 07670 Tel (201) 569-1595 Fax (201) 596-2724**

the public and private sector to create jobs, better neighborhoods for people to live in, and opportunities for growth. Mr. Tabone's wife and children continue to be wonderfully close to their husband and father; they support him completely and without hesitation throughout this matter, and they have written moving letters of support to the Court. The more than 50 letters of support from family and friends describe a lifetime of his helping others, and those very people now stand with him as he needs their help to guide him through his dark time. He has been completely compliant with the terms of his pre-trial release, and Probation recommends voluntary surrender as he is neither a danger to the community nor a risk of flight.

C. The history and characteristics of the defendant (18 U.S.C. § 3553 (a)(l))

PSI ¶¶46-58 describe Mr. Tabone's family. Mr. Tabone is 50 years old and he was born in Queens, New York in 1966 to Vincent P. Tabone and Patricia (McDermott) Tabone. His father, age 74, is a retired postal police officer lieutenant and his mother, age 68, is a retired executive secretary. He was the second of three children born to the marriage. His older sister Dominica Mancuso is a homemaker and previously worked as a school aide. She is married to a bus driver. His younger sister Melinda Tabone-Rabbia is also a homemaker and was previously an investment banker until she resigned to raise her children. She is also married and her husband is an IT specialist for an investment bank. Both sisters have had cancer (skin and breast, respectively). The elder Mr. Tabone suffers from cardiac issues. Mr. Tabone is in generally good health as are his children and wife. Mr. Tabone reports that education and hard work as tools to reach each person's greatest potential was ingrained in him by his parents at a very early age, and he and sisters tried their hardest to live up to their parents' hopes and expectations.

Mr. Tabone married Saida Rodriguez-Tabone on November 10, 1994 and they now have three children: [redacted] (7) is in grade school, [redacted] (14) is a freshman at Bronx High School of Science, and Sabrina Tabone (20) is a junior at Stanford University. Mrs. Rodriguez-Tabone is the assistant principle of administration at Stuyvesant High School in New York City. Clearly, Mr. Tabone and his wife have ingrained in their children the same drive to achieve their own greatest potential. Mrs. Rodriguez-Tabone described the change in her husband since his arrest: "He is down, but he is more humble, his demeanor is better. He's the man I fell in love with. He is more dedicated to family and the children finally have a dad that's involved." She reports that he had been abstinent and sober and attends AA regularly.(See also PSI ¶¶62-66) Mr. Tabone regularly takes his 7 year old son to school each morning (the highlight of his day).

Mr. Tabone graduated from Far Rockaway High School in 1982, studied at Queens College from 1983-1984, graduated from Baruch college in 1987, and New York Law School in 1999. He was admitted to the bar of New York in 2000, but will be disbarred upon his



**225 Broadway, Suite 715**
**New York, New York 10007**
**Tel (212) 566-6213**
**Fax (212) 566-8165**

**901 Sheridan Avenue**
**Bronx, New York 10451**
**Tel (718) 293-1977**
**Fax (718) 293-5395**

**505 Eighth Avenue, Suite 300**
**New York, New York 10018**
**Tel (212) 967-0352**
**Fax (201) 596-2724**

**Post Office Box 127**
**Tenafly, New Jersey 07670**
**Tel (201) 569-1595**
**Fax (201) 596-2724**

sentencing in July. He was the first person in his family to graduate from college and the first to become a lawyer.

Mr. Tabone has built a career in public and private service of his community and the City of New York. (PSI ¶¶72-79). As is outlined in the report and extensively commented on in the letters of support, Mr. Tabone spent decades working to build a better New York. The lawyers who worked under him report him to be truly dedicated to the work and an inspiring leader; the teacher who taught him at night in law school reported that "he was generous with his insight which was normally very valuable . . . He stood out for the level of hard work and the quality of his performance in class and on exams." His clients write of a lawyer who went beyond the minimum to help protect their businesses, their community centers, and their homes.

D. The need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law and to provide just punishment for the offense; To afford adequate deterrence to criminal conduct; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; And to protect the public from further crimes of the defendant (18 U.S.C. § 3553 (a)(2))

Probation's recommendation of a guideline sentence is misplaced (and particularly so given their error in calculation of the guidelines). There is no reason to impose a six or eight year jail sentence on Mr. Tabone, either for who his is as a defendant or for the crime he committed. The "heartland" case justifies a "heartland" sentence on a "heartland" defendant. But this defendant is different. As Theodore Nikolis writes in his letter of support to this Court:

> His good works and family beg the question which directly involves you - - What is the appropriate punishment? How does one balance retribution, the protection of society and the need to set an example on one side with the impact upon family, friends and in this case, I would argue, the loss to society from punishment such as jail time on the other? I believe Vince's public disgrace, the suspension of his legal license, the probable loss of his board positions, the economic impact of legal fees and, perhaps worse still, the tainting of his legacy of good works is punishment enough. Vince is not a threat to society and the stain to his reputation and integrity has already caused more pain and suffering than any incarceration could."

Sentencing guideline provisions that should apply to Mr. Tabone (either directly or by implication) are as follows:



225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
Fax (212) 566-8165

901 Sheridan Avenue
Bronx, New York 10451
Tel (718) 293-1977
Fax (718) 293-5395

505 Eighth Avenue, Suite 300
New York, New York 10018
Tel (212) 967-0352
Fax (201) 596-2724

Post Office Box 127
Tenafly, New Jersey 07670
Tel (201) 569-1595
Fax (201) 596-2724

§5H1.6 Family Ties and Responsibilities. Normally family ties are not to be considered generally in fashioning an appropriate sentence. However Application Notes 1.B for this section indicate that a downward departure may be appropriate:

> "based on the loss of caretaking or financial support of the defendant's family requires, in addition to the court's consideration of the non-exhaustive list of circumstances in subdivision (A), the presence of the following circumstances:
>
> (i) The defendant's service of a sentence within the applicable guideline range [or above guideline range] will cause a substantial, direct, and specific loss of essential caretaking, or essential financial support, to the defendant's family;
>
> (ii) The loss of caretaking or financial support substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. For example, the fact that the defendant's family might incur some degree of financial hardship or suffer to some extent from the absence of a parent through incarceration is not in itself sufficient as a basis for departure because such hardship or suffering is of a sort ordinarily incident to incarceration.
>
> (iii) The loss of caretaking or financial support is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking or financial support irreplaceable to the defendant's family.
>
> (iv) The departure effectively will address the loss of caretaking or financial support."

Clearly, in light of the loss of much more than 50% of the family income, the potential for long-term unemployment of Mr. Tabone upon his release from jail based upon his certain disbarment, and the value that a downward departure will have in returning Mr. Tabone to work as soon as possible, §5H1.6 consideration is appropriate.

The lack of criminal history of Mr. Tabone (§5H1.8), and the lack of history of using criminal activity for livelihood (§5H1.9), do not authorize a downward departure *per se* (contrast the presence of either as a basis for increased guidelines, increased sentence within applicable guidelines, or an upward departure), but they are certainly relevant to counter Probation's recommendation for a substantial prison sentence.

Similarly, Mr. Tabone would meet all the criteria of Aberrant Behavior (§5K2.20) in that the offense was a singular criminal event, was of limited duration, and represented a




| | | | |
|---|---|---|---|
| **225 Broadway, Suite 715** | **901 Sheridan Avenue** | **505 Eighth Avenue, Suite 300** | **Post Office Box 127** |
| **New York, New York 10007** | **Bronx, New York 10451** | **New York, New York 10018** | **Tenafly, New Jersey 07670** |
| **Tel (212) 566-6213** | **Tel (718) 293-1977** | **Tel (212) 967-0352** | **Tel (201) 569-1595** |
| **Fax (212) 566-8165** | **Fax (718) 293-5395** | **Fax (201) 596-2724** | **Fax (201) 596-2724** |

marked deviation by the defendant from an otherwise law-abiding life. This section is relevant to counter Probation's recommendation for a significant prison sentence.

Further, imposing a maximum possible sentence (or even an above guideline sentence) is uncommon regardless of the circumstances of the case. Since 1996, sentences imposed above the applicable guidelines consistently remain below 3% of all sentences imposed nationwide.[1] By contrast, in the Southern District of New York in the period since *United States v. Gall* (12/11/07 - 9/30/11 (the final date of the report)), above-guideline sentences occurred in only 0.4% of all cases. Attached hereto is the report of MCM Data Consulting, Meredith Patti, Esq., which suggests that for cases around the county, in the Second Circuit, and in the Southern District of New York, a below guidelines sentence is the overwhelming norm (57-66% of all cases, depending on a base offense level of 14 or 12, respectively) and a downward departure of 19 or 14 months from the bottom of the applicable guidelines (depending on a base offense level of 14 or 12, respectively). Where a defendant was convicted of crimes contemplating the above guidelines and was also convicted of 18 USC §1512, the sentences imposed averaged 46.5 and 37.0 months (depending on a base offense level of 14 or 12, respectively.)

As for the "general deterrence" and "promote respect for the law" requirements of §3553a, if the general public were to learn that a person who conspires with others and accepts a bribe loses his job and state licenses, has a felony conviction forever, loses his primary means of support and employment, and has to live under rigorous supervision and curfew for years, I suggest that the public would believe that the law's promise of "punishment for the guilty" would be effected. As for specific deterrence, there can be no argument that Mr. Tabone has not felt the sting of conviction and approbation, and all parties would agree that he is extremely unlikely to ever offend again.

Attached to this memorandum are the following letters from family, friends, colleagues, and co-workers of Mr. Tabone. They paint a picture of a decent, hardworking, and talented man, friend, and colleague, who made a mistake in judgment, but who remains loved, appreciated, and cared for by all who know him. The letters speak to Mr. Tabone's strong commitment to his family, his decades of community service and outreach, and his overwhelming sense of remorse and regret for his actions in the instant case as seen by those closest to him. The letters speak to his persistent humiliation and emotional paralysis because of his feelings of guilt. His friends and family talk about how every day he demonstrates his understanding of how he has destroyed his life. He is aware of the consequences of what he did, not only for himself but for others as well. He understands that what he did was criminal, violated the rules of society, and creates actual victims of his crimes including his immediate family. The following letters are attached:

---

[1] See USSG report at http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/booker-reports/2012-booker/Part_C1_Overview.pdf (2012)



225 Broadway, Suite 715
New York, New York 10007
Tel (212) 566-6213
Fax (212) 566-8165

901 Sheridan Avenue
Bronx, New York 10451
Tel (718) 293-1977
Fax (718) 293-5395

505 Eighth Avenue, Suite 300
New York, New York 10018
Tel (212) 967-0352
Fax (201) 596-2724

Post Office Box 127
Tenafly, New Jersey 07670
Tel (201) 569-1595
Fax (201) 596-2724

Family and friends:

1. Sabrina Tabone, daughter of Vincent Tabone.
2. Melinda Rabbia, sister of Vincent Tabone.
3. Patricia Anne Tabone, mother of Vincent Tabone.
4. Saida Rodriguez Tabone, wife of Vincent Tabone.
5. Julia Rabbia, niece of Vincent Tabone.
6. Salvatore Mancuso, brother-in-law of Vincent Tabone.
7. Dominica Mancuso, sister of Vincent Tabone.
8. Christopher Jorgensen, cousin of Vincent Tabone.
9. Nicholas Mancuso, nephew of Vincent Tabone.
10. Debra Zampino, lifelong family friend of Vincent Tabone.
11. Msgr. Martin T. Geraghty, pastor of Vincent Tabone.
12. Edward C. Wallace, former law school professor of Vincent Tabone.
13. Pamela Chea, long time family friend of Vincent Tabone.
14. Francis K. Kenna, 20 year friend of Vincent Tabone.
15. Frankie Mancuso, nephew of Vincent Tabone.
16. Genevieve Brown, cousin of Vincent Tabone.
17. John W. Goomishian, lifelong friend of Vincent Tabone.
18. Marc Denker, long time friend of Vincent Tabone.
19. Maria Lizondo, long time friend of Vincent Tabone and former client.
20. Maria Lynch, 20 year friend of Vincent Tabone.
21. Marvin Jeffcoat, 10 year friend of Vincent Tabone.
22. Stephanie Kowalski, 24 year friend of Vincent Tabone.

Professional relationships:

23. Ruby Muhammad, community leader Lefrak City.
24. Frank Perero, client, union shop steward, Hyatt Hotel.
25. Carol de Fritsch, attorney under Vincent Tabone supervision, Legal Affairs Division, New York Liquidation Bureau.
26. John Adams, attorney under Vincent Tabone supervision, New York Economic Development Corporation.
27. Allan Jennings, party official under Vincent Tabone supervision.
28. Demetrios Ganiaris, attorney under Vincent Tabone supervision, New York Economic Development Corporation.
29. Douglas MacLaury, attorney supervising Vincent Tabone, New York Economic Development Corporation.
30. Joseph Kasper, adversary in party politics and long time friend and admirer.
31. Elio Forcina, adversary in race for 26th Assembly District.
32. Herbert Stupp, former federal regional administrator, NYC Commissioner, and long time friend.
33. Jack Franceshetti, attorney under Vincent Tabone supervision, New York Liquidation Bureau.



**225 Broadway, Suite 715**
**New York, New York 10007**
**Tel (212) 566-6213**
**Fax (212) 566-8165**

**901 Sheridan Avenue**
**Bronx, New York 10451**
**Tel (718) 293-1977**
**Fax (718) 293-5395**

**505 Eighth Avenue, Suite 300**
**New York, New York 10018**
**Tel (212) 967-0352**
**Fax (201) 596-2724**

**Post Office Box 127**
**Tenafly, New Jersey 07670**
**Tel (201) 569-1595**
**Fax (201) 596-2724**

34. Jacob Kim, client and long time friend of Vincent Tabone.
35. Janet Stewart, attorney under Vincent Tabone supervision, New York Liquidation Bureau.
36. Jason Antos, co-member of the Board of Directors of Bayside Historical Society with Vincent Tabone.
37. J.D. Kim, member of the Korean American Senior Citizen's Society which Vincent Tabone represented.
38. Jim Deenihan, community leader and long time friend of Vincent Tabone.
39. John Bougiamas, member of Queens County Republican Committee and long time friend of Vincent Tabone.
40. Lucille Reinecke, director of homeless shelter program at Immaculate Conception Church, Astoria Queens.
41. Mary Jo Termini, attorney under Vincent Tabone supervision, New York Liquidation Bureau.
42. Melissa Pisapia, attorney under Vincent Tabone supervision, New York Liquidation Bureau.
43. Michael Pisapia, former prosecutor and long time friend of Vincent Tabone.
44. Natalie Dubovici, employee of Queens County Republican Party and trial witness.
45. Serphin Maltese, 20 year New York State Senator, 15th District (Queens, NY).
46. Seth Bornstein, attorney working with Vincent Tabone, New York Economic Development Corporation.
47. Theodore Nikolis, former executive director, Red Apple Group.
48. Vasos Panagiotopoulos, former member Queens County Republican Committee and 20 year friend of Vincent Tabone.
49. William Garifal, Jr., small business owner and former client of Vincent Tabone.
50. Patrick McShane, former co-Council Member, Community District Education Council 26 with and long time friend of Vincent Tabone.
51. Pierre Alcantara, long time friend and mentee of Vincent Tabone.
52. Rabbi Yossi Blesofsky, Chabad Lubavitch Community Center of Northeast Queens, 10 year friend and colleague of Vincent Tabone.
53. Robert Beltrani, co-executive committee member QGOP Executive Committee and trial witness.
54. Ronald Ervolino, client of Vincent Tabone and New York Economic Development Corporation.
55. Rudy Washington, former Deputy Mayor for Community Development and Business Services and 25 year friend and colleague of Vincent Tabone.

The letters of support are consistent for a reason: Mr. Tabone is a good man and an extraordinary builder of communities. Writer after writer extols his gift for helping people, be it his colleagues in the law, his family who talks about his dedication to both them and the world around him. Though the offense is serious, the anomaly of a maximum sentence to assuage our



**225 Broadway, Suite 715**
**New York, New York 10007**
**Tel (212) 566-6213**
**Fax (212) 566-8165**

**901 Sheridan Avenue**
**Bronx, New York 10451**
**Tel (718) 293-1977**
**Fax (718) 293-5395**

**505 Eighth Avenue, Suite 300**
**New York, New York 10018**
**Tel (212) 967-0352**
**Fax (201) 596-2724**

**Post Office Box 127**
**Tenafly, New Jersey 07670**
**Tel (201) 569-1595**
**Fax (201) 596-2724**

perception that the political world is corrupted by those who escaped any consequences at all actually undermines respect for the law. It suggests, as Probation essentially proposes with its sentencing recommendation of a substantial jail term, a sentence "for the education of others." Incongruously, Probation also recommends the minimum term of post-release supervision, indicating a concession that Mr. Tabone is extremely unlikely to commit any criminal conduct in the future.

A reasonable starting point for calculating the sentence should be whether an incarceratory sentence is required at all for this non-violent offense, and then increasing the punishment for any relevant factors so as to give real credence to the "not greater than necessary" clause of §3553(a). As Mr. Tabone has never been behind bars, the threat of jail time attendant to his conviction has consumed his thinking. If this Court imposes a 24 month period of incarceration, it will still have a devastating impact on Mr. Tabone and (much more significantly for him) it will impact his family and community as well. Such as sentence will not give Mr. Tabone or society the impression that he has somehow "gotten away with this." For many defendants, jail has no rehabilitative qualities. It is merely detention, a way to provide specific deterrence to the individual by making him incapable of committing crimes. Mr. Tabone's life as an attorney and politician is over and the necessary lessons have been learned. For a few defendants, those who have never experienced jail, who have a good support network of family, work, and friends, and for those who during a period of incarceration actually come to understand the cause of their situation – their own behavior – they can actually change in a relatively short period of time. His volunteer hours in the public interest should be heavily weighted by this Court. An appropriate solution is to use the Guidelines and §3553a as they were intended, and to impose a just and fair sentence.

Respectfully submitted,

s/ Sam Braverman

Samuel M. Braverman
Fasulo Braverman & Di Maggio, LLP
Attorneys for Vincent Tabone
901 Sheridan Avenue
Bronx, New York 10451
Tel 718-293-1977
Fax 718-293-5395
SBraverman@FBDMLaw.com

Attached: 55 letters of support
Report of MCM Data Consulting
CC: All Parties (BY ECF)



**225 Broadway, Suite 715**
**New York, New York 10007**
**Tel (212) 566-6213**
**Fax (212) 566-8165**

**901 Sheridan Avenue**
**Bronx, New York 10451**
**Tel (718) 293-1977**
**Fax (718) 293-5395**

**505 Eighth Avenue, Suite 300**
**New York, New York 10018**
**Tel (212) 967-0352**
**Fax (201) 596-2724**

**Post Office Box 127**
**Tenafly, New Jersey 07670**
**Tel (201) 569-1595**
**Fax (201) 596-2724**